[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiffs, Mildred Groobert and Eva Katzman, bring this action to quiet title and for equitable relief seeking to clear CT Page 6220-c their title to three pieces of property on North Cherry Street in Wallingford. The properties at issue are known as 155 North Cherry Street, 177-181 North Cherry Street, and 174 North Cherry Street. The three properties have since about 1964 been managed by a partnership known as Katzman Realty Company, of which the owners of the properties were the partners.
The plaintiffs are elderly sisters, who, along with a deceased brother, Max Katzman, and a deceased sister, Frances Revitch, acquired the three properties upon the death of their sister, Bessie Katzman, in 1964. The remaining defendant is Hinda Revitch, administratrix of the estate of her father, Julius Revitch. The defendant is the daughter and only child of Frances Revitch, wife of Julius Revitch.
At trial, the plaintiffs established that they had been approached in approximately 1988 with regard to a purchase of the three parcels for approximately $473,000.00. When the potential buyer did a title search, he asserted that title was in doubt because it was not clear whether Mildred Groobert, Max Katzman and Eva Katzman were the sole owners or whether Frances Revitch CT Page 6220-d had an interest in the property as well. That uncertainty, and its affect on the plaintiffs' ability to sell their land, led to the filing of this action in October 1989. Max Katzman died after this action was filed, leaving his interest in the properties equally to the remaining two plaintiffs.
Mildred Groobert testified that in January 1977 she and Eva and Max Katzman, who resided together in one of the five houses on the jointly owned property, received a communication from Hinda Revitch, the daughter of their sister and co-owner, Frances Revitch, who was married and who lived in Utica, New York. Hinda Revitch urgently requested money for health care for her mother and suggested that the jointly held properties be mortgaged to raise funds. George Groobert, the husband of Mildred Groobert, put together a transaction by which, in return for exactly one-fourth the assessed value of the three properties, that is, $14,125.00, Frances Revitch was to sell her interest to the other three co-owners. Mr. Groobert, who died in March of 1978, took our a loan from City Savings Bank on January 13, 1977, assigning to the bank a certificate of deposit to which he and his wife, as well as Katzman Realty, a partnership through which the CT Page 6220-e properties at issue were managed, had contributed.
Mildred Groobert testified without rebuttal that a check in the amount of $14,125.00 was mailed to Frances Revitch. It has been stipulated that Hinda Revitch signed her mother's name to a document dated January 13, 1977, which stated that Frances Revitch
 "do[es] hereby agree to sell my one-fourth share of the Katzman Realty Company, 174 No. Cherry Street, Wallingford, Connecticut, for the sum of $14,125.00 to the following:
 Miss Eva Katzman, 174 North Cherry Street, Wallingford, Conn.
 Max D. Katzman, 174 North Cherry Street, Wallingford, Conn.
 Mrs. Mildred Groobert, 174 No. Cherry Street, Wallingford, Conn. CT Page 6220-f
 By virtue of this agreement, I Frances Revitch, relinquish all ownership rights of the properties owned by Katzman Realty Company, a partnership established in the State of Connecticut."
There was no indication at trial that the plaintiffs were aware at the time, they received the document that it was signed by Hinda Revitch rather than by Frances Revitch herself. Hinda Revitch did not testify at trial.
This document, which was filed in the Wallingford land records on July 27, 1977, was prepared by George Groobert, who was not a lawyer. It does not bear the names of two witnesses nor indicate that the transfer was the free act and deed of Frances Revitch, as required by 47-5 C.G.S.
After the transaction described above, neither Frances Revitch, nor, after her death, her administrator, Julius Revitch, ever made any claim of continued ownership of a one-fourth CT Page 6220-g interest in the land on North Cherry Street. They made no contribution toward payment of taxes, insurance or operating expenses as to the property.
When this action was filed in 1989, the defendants Julius revitch, Hinda Revitch and Julius Revitch as administrator of the estate of Frances Revitch, never filed an answer, as required by47-31(d) C.G.S., stating a claim as to any part of the property at issue or setting out the manner in which their estate or interest was claimed to be derived. Rather, the defendants filed answers admitting many of the allegations of the plaintiffs and otherwise indicated that they "do not have sufficient knowledge or information upon which to form a belief and therefore leave the plaintiffs to their proof."
Though the plaintiffs characterize the defendant's failure to file a statement of her claim as a fatal noncompliance with47-31(d) C.G.S., it has been held that where the complaint itself describes the facts on which the defendant's claim is based, no further statement of a claim is necessary. Foote v. Brown, 78 Conn. 369, 377 (1905). The complaint does, indeed, CT Page 6220-h state the facts upon which the defendant relies for her claim that title to the one-fourth interest of Frances Revitch was never validly conveyed. The answer therefore sufficiently complies with 47-31(d).
From 1977 to the date of trial, the plaintiffs have treated the properties as exclusively theirs. After the transaction in January 1977 they discontinued sending Frances Revitch or her estate any partnership checks, they treated her as no longer a partner in Katzman Realty Company nor an owner of the properties at issue, and they received no claim from her or her estate to the contrary. Upon the death of Frances Revitch in 1977, her administrator, Julius Revitch, never caused any notice of her death or certificate of distribution to be entered on the land records, nor were any such notices filed upon the death of Julius Revitch in 1990 by his only heir at law, Hinda Revitch, the sole defendant at this time.
While the document by which the ailing Frances Revitch purported to convey her interest in the land at issue to her brother and sisters in return for urgently needed cash clearly did not conform with the requirements of 47-5 C.G.S., any CT Page 6220-i deficiencies in the instrument at issue were cured by the validating acts of 1977 and 1978. S.A. 77-61 12 validated "any . . . instrument made for the purpose of conveying . . . or affecting real property . . ." that failed to satisfy the various requirements of 47-5 C.G.S. S.A. 79-10 12 does the same for subsequent instruments. Both special acts specifically provide for validation of multiple defects. See S.A. 77-61 25; S.A. 79-10 25.
The defendant concedes that the validating acts cure the improper acknowledgement and lack of witnesses to the document (Defendant's Post-Trial Brief, filed June 18, 1993, at page 8). She claims, however, that the validating acts do not cure the fact that the agreement was signed by her on her mother's behalf, rather than by Frances Revitch herself or that the land is not clearly identified, as required by 52-550 C.G.S.
As to the identification of the property, it is well settled that as long as the identity of the property can be determined through the conveyance document and extrinsic means with "reasonable certainty" the agreement satisfies the Statute of CT Page 6220-j Frauds. Gendelman v. Mongillo, 96 Conn. 541, 547 (1921); Foster v. Civale, 15 Conn. Sup. 190, 191 (1947). The reference in the document to "the properties owned by Katzman Realty Company" permits the exact identification of the parcels at issue. The undisputed evidence was that Katzman Realty Company was concerned with these properties and only these properties at the time of the transfer. Accordingly, the properties are identified sufficiently to satisfy the statute of frauds.
The validating acts also serve to cure the issue of Hinda Revitch having signed her mother's name to the agreement. The validating act applies to validate agreements where an agreement to convey "was not signed by the grantor but was acknowledged and delivered by him." The court finds sufficient evidence that Frances Revitch acknowledged the agreement by the fact that neither she nor anyone acting on her behalf ever asserted any continued right to receive proceeds or duty to contribute to expenses of the properties, from the acceptance of the plaintiffs' payment, and from the delivery of the agreement to the plaintiffs' representative, Mr. Groobert.
Even if the validating acts were seen as inapplicable, CT Page 6220-k the result must be the same under other applicable doctrines.
If the defendant in this action were anyone other than the person who signed the document for Frances Revitch, the equities might be less clear. Under the circumstances, however, Hinda Revitch cannot be allowed to profit from circumstances or documentary defects of her own creation, especially after inducing the plaintiffs to pay the value of her mother's one-quarter interest in the properties at issue. Under the facts presented, the defendant is estopped by her conduct from contesting the validity of the transfer of property at issue. Novella v. Hartford Accident Indemnity Co., 163 Conn. 552, 563
(1972); Fawcett v. New Haven Organ Co., 47 Conn. 224, 227.
Finally, it has been held that performance, even part performance, takes a contract for the conveyance of real property out of the statute of frauds where a contract exists, so that the statute of frauds will not become an "engine of fraud." Ubysz v. DiPietro, 185 Conn. 47, 54 (1981); Harmonie Club v. Smirnow,106 Conn. 243, 249 (1927).
In summary, the application of validating acts serves to CT Page 6220-l cure noncompliance with the requirements of 47-5 C.G.S. as to recorded instruments. Dennen v. Searle, 149 Conn. 126, 133-4
(1961). The doctrine of estoppel precludes the defendant from challenging the signature of the grantor, and the reference to the property held by Katzman Realty Company satisfies the statute of frauds, as does evidence of full performance of the contract by the plaintiffs.
It is the judgment of the court that the plaintiffs, Mildred Groobert and Eva Katzman, are the sole owners of the real property known as 155 North Cherry Street, 177-181 North Cherry Street, and 174 North Cherry Street, in Wallingford, as further described in Exhibit A to the plaintiffs' amended complaint, and that these two owners are tenants in common who each own undivided half interests in each of the properties.
The plaintiffs shall recover their statutory court costs.
Beverly J. Hodgson Judge of the Superior Court CT Page 6220-m