15437

REEVES v. SARGEANT

(21 S. E. (2d), 184)

February, 1941.

*Messrs. Melton & Belser,* of Columbia, Counsel for Appellant,

*Mr. John C. Payne* and *Mr. C. T. Graydon,* both of Columbia, Counsel for Respondent.

July 6, 1942.

The opinion of the Court was delivered by Mr. Associate Justice Fishburne.

This action was commenced in December, 1940, to enjoin the breach of a contract which the defendant, J. A. Sargeant, made with the plaintiff in April of the same year. A restraining order was granted at the institution of the suit. When the case was reached for trial, the defendant submitted an oral demurrer raising the issue that the complaint should be dismissed upon the ground that the contract was invalid and unenforcible. The demurrer was sustained, and the restraining order was dissolved. From this judgment the appeal is prosecuted by the plaintiff.

It is made to appear from the allegations of the complaint that prior to April 20, 1940, the defendant, who was a photographer of wide experience and clientele, living and conducting his photographic business in the city of Columbia, Richland County, published in certain photographic trade journals an advertisement offering his business for sale; that the plaintiff, likewise a photographer of long experience, was then living and conducting a photographic business in Atlanta, Georgia. That he was induced by the advertisement to enter into negotiations with the defendant which resulted in the purchase by him of the business of the Sargeant Photo Company in Columbia for the sum of $3,500.00 paid in cash, together with all of its assets, good will, and the exclusive right to use the name of "Sargeant Photo Company."

This purchase, and the contract entered into between the parties as a part thereof, was executed on April 20, 1940, and immediately thereafter the plaintiff leased a building and commenced the conduct and operation of the photographic business in the City of Columbia as the successor of the defendant, in the name of Sargeant Photo Company.

It is alleged that the defendant represented to the plaintiff, in the effort to effect the sale of the business and assets, that the name of Sargeant was well established in the city of Columbia and in the county of Richland; and that the good will established by the defendant through many years constituted a valuable asset in the continuation of such photographic business in the name of Sargeant Photo Company. It is alleged that this was the moving consideration which led the plaintiff to make the purchase and enter into the contract.

That portion of the contract pertinent to this controversy reads as follows: "Said party of the first part furthermore covenants and agrees that he will never again enter into the photograph business either in his own name or under any other name, in Richland County, South Carolina, nor will he permit anyone else to enter into the photograph business in the said county under his name, but said party of the second part is given perpetual authority to operate said studio under the name it is now operated, or under the name of Sargeant's Studio, or to use the name Sargeant, in connection with said business in any manner he may see fit."

It is further alleged that the physical assets of the business were reasonably worth the sum of approximately $500-.00, and that in purchasing the business the plaintiff considered the name "Sargeant", when used in connection with the photographic business in Richland County, together with the long established good will connected with that name, as its principal asset, and worth $3,000.00.

It appears that subsequent to the consummation of the sale, and after the plaintiff had embarked upon the photographic business in the city of Columbia, the defendant com-

menced a systematic effort to drive the plaintiff out of business. He would enter the plaintiff's place of business, and in the presence of customers in a loud voice, would make derogatory remarks to the effect that the plaintiff was defrauding the public, and would request plaintiff's customers to discontinue doing business with him; threatening his employees and in other ways endeavoring to humiliate and embarrass the plaintiff. It is also alleged that the defendant has threatened to commence various and sundry lawsuits against the plaintiff if he does not desist from conducting his photographic business in the name of "Sargeant"; that the defendant, in direct and flagrant breach of his contract with the plaintiff, is continuing and will continue to take pictures and make photographs in Richland County, and unless restrained by the Court will irreparably damage the plaintiff and render his contract nugatory.

The defendant successfully contended in the lower Court that the contract being one in partial restraint of trade is void and against public policy, because the duration of the restraint upon the defendant is unreasonable, in that it is without time limit. The execution of the contract was admitted. For the purpose of deciding the issue, the allegations of the complaint which we have recited will be deemed to be true.

The question presented by the appeal is the validity of the covenant imposing the restraint. This question has so often been the subject of judicial decision in this country and in England, that in respect to it but little room is left for argument. It is well-settled that while contracts in general restraint of trade are against public policy and void, yet those in partial restraint, founded upon a valid consideration and reasonable in their operation, are valid and binding. *Metts v. Wenberg,* 158 S. C., 411, 155 S. E., 734. The test which generally is laid down by which it may be determined whether a contract is reasonable is whether it affords a fair protection for the interests of the party in whose favor it is made, without being so large in its opera-

tion as to interfere with the interest of the public. 17 C. J. S., Contracts, § 240, p. 623, 36 Am. Jur., section 52, page 533, and cases cited.

It will be observed that, by the contract in question, the defendant agreed to abstain from ever again engaging in the photographic business in Richland County, either in his own name or under any- other name; and, in addition thereto, granted to the plaintiff "perpetual authority to operate said studio under the name it is now operated, or under the name of Sargeant's Studio, or to use the name Sargeant in connection with said business in any manner he may see fit."

Taking the facts stated in the complaint to be true, it is manifest that the alleged conduct of the defendant does now, and, unless he be restrained therefrom, will continue to interfere with and work injury and damage to the property rights and business interests of the plaintiff. It is clear that the defendant possessed valuable rights, and that they were in the nature and character of property rights. It is equally clear that it was in consideration of the transfer of those rights to the plaintiff that he entered into the contract of purchase and paid to the defendant in cash the sum of $3,-500.00. Common fairness requires that the plaintiff should be protected in the rights thus acquired by him, unless some consideration of general public policy dictates that his grievance should go unheard.

In the case of *Herreshoff v. Boutineau*, 17 R. I., 3, 19 A., 712, 713, 8 L. R. A., 469, 33 Am. St. Rep., 850, it has been well said: "Public policy is a variable test. In the days of the early English cases, one who could not work at his trade could hardly work at all. The avenues to occupation were not as open nor as numerous as now, and one rarely got out of the path he started in. Contracting not to follow one's trade was about the same as contracting to be idle or to go abroad for employment. But this is not so now. It is an every-day occurrence to see men busy and prosperous in other pursuits than those to which they were trained in youth, as well as to see them change places and occupations

without depriving themselves of the means of livelihood, or the state of the benefit of their industry. It would therefore be absurd, in the light of this common experience now, to say that a man shuts himself up to idleness or to expatriation, and thus injures the public, when he agrees, for a sufficient consideration, not to follow some one calling within the limits of a particular state. There is no expatriation in moving from one state to another, and from such removals a state would be likely to gain as many as it would lose."

The same principle is clearly stated in *Wood v. Whitehead Bros. Co.,* 165 N. Y., 545, 59 N. E., 357, 358: "The doctrine which avoids a contract for being one in restraint of trade is founded upon a public policy. It has its origin at a time when the field of human enterprise was limited, and when each man's industrial activity was, more or less, necessary to the material well-being and welfare of his community and of the state. * * * The conditions which made so rigid a doctrine reasonable no longer exist. In the present practically unlimited field of human enterprise there is no good reason for restricting the freedom to contract, or for fearing injury to the public from contracts which prevent a person from carrying on a particular business. Interference would only be justifiable when it was demonstrable that, in some way, the public interests were endangered."

To anyone at all familiar with present-day conditions, it requires no argument to demonstrate that public policy requires that in matters connected with trade there shall be no restraint imposed save in those instances where it is clearly made to appear that the public welfare would be otherwise seriously endangered. An all-important factor in business life is the right of individual contract—the right to buy and sell, to bargain and convey at will. The demand for recognition of this principle coming up from the world of business has been heard and countenance given thereto by legislatures and Courts everywhere.

So, too, note has been taken of the baneful results which follow, seemingly with inevitable certainty, from giving sanction, even negatively, to acts or conduct involving fraud or dominated by bad faith. Certainly it is not going too far to say that there can be no sound public policy which operates to give countenance to the open disregard and violation of personal contracts entered into in good faith and upon valid consideration. *Swigert & Howard v. Tilden,* 121 Iowa, 650, 97 N. W., 82, 63 L. R. A., 608, 100 Am. St. R., 374.

A leading English case (*Underwood v. Barber,* 68 L. J., Ch. Div., 201), states this basic and pertinent truth: "If there is one thing more than another which is essential to the trade and commerce of this country, it is the inviolability of contracts deliberately entered into; and to allow a person of mature age, and not imposed upon, to enter into a contract to obtain the benefit of it, and then to repudiate it and the obligations which he has undertaken, is *prima facie* at all events, contrary to the interest of any and every country."

In giving application to the present-day doctrine it is held that the restraint must be reasonable, not oppressive, or out of proportion to the benefits which the vendee may in reason except to flow from the restrictive features of the contract, and not injurious to the interests of the public, *Beam v. Rutledge,* 217 N. C., 670, 9 S. E. (2d), 476, *Rakestraw v. Lanier,* 104 Ga., 188, 30 S. E., 735, 69 Am. St. Rep., 154.

In determining whether a contract in partial restraint of trade is reasonable, the Court will look to the whole subject-matter of the contract, the kind and character of business, its location, the purpose to be accomplished by the restriction, and all circumstances which show the intention of the parties and which must have entered into the making of the contract. 36 Am. Jur., Section 51, Page 532, 17 C. J. S., Contracts, § 247, p. 630.

In the case before us, the restraint is limited as to space or territory, and is to run during the lifetime of the defendant. It is only as to the time feature that the defendant objects. In determining whether a contract is reasonable in respect to the length of time during which the restriction is to run, as applied to a case like the one before us, it would seem that the fair and full protection of the business, good will and trade name which the vendee has purchased and paid for, may well be accepted as the test. It follows naturally that each case must be governed in the main by its own facts.

From a consideration of this case, it seems clear that no monopoly is created, nor is the public welfare put in jeopardy. The covenant or contract is one in partial restraint of trade, and although operative for the lifetime of the defendant, this under the authorities is not a valid objection, if the contract is otherwise good. *Diamond Match Co. v. Roeber,* 106 N. Y., 473, 13 N. E., 419, 60 Am. Jur. Rep., Section 64, page 544.

Generally, an agreement imposing a restraint reasonably limited in space is not against public policy, although unlimited in time of operation, if it is reasonable with respect to the protection of the vendee and the public interest. Of course in all cases it is essential that the restrictive covenant be incidental to another lawful contract of sale involving some interest requiring the protection of the restraint. 17 C. J. S., Contracts, §§ 244 and 246, pp. 624 and 627.

We think the reasonableness of the restraint in the case at bar may be demonstrated. In the first place, we consider whether the restriction is more comprehensive than is necessary to secure to the plaintiff the benefits of his purchase. Is the protection afforded the plaintiff larger or wider than is necessary? In this case, the defendant entered into the covenant, not only for the sale of his property, but the contract included the sale of the good will and the use of his name. He realized a large sum of money, and

presumably he considered it to his advantage to make the sale. One element of the value of the business transferred by him to the plaintiff was the almost certain probability that his customers would continue to trade with the plaintiff, and this probability was increased and the value of the purchase enhanced by the agreement of the defendant not to engage in the same business in the county of Richland during his lifetime. Such an agreement was a strong inducement to the plaintiff to make the purchase, and was based upon a good consideration. The defendant is at liberty to engage in any other business in Richland County not related to the photographic business, or in the photographic business in any place other than Richland County. There was, therefore, only a limited restraint upon him as a tradesman, and not upon trade generally. The contract as we view it was in no sense unreasonable or oppressive.

Where one person is restrained from doing a particular business in a particular place, competition is left open to all others, and there is no injury to the public. The person restrained in such case merely yields to another the use of what he has disposed of to that other for value. To the extent that the contract prevents the vendor from carrying on a photographic business in Richland County, it deprives that community of any benefit it might derive from his entering into competition, but the business is open to all others, and there is little danger that the public will suffer harm from lack of persons to engage in a profitable industry.

It may reasonably be inferred that if the defendant should be allowed to breach his contract and re-enter the photographic business in Richland County, which includes the City of Columbia, the value of the good will which he sold to the plaintiff and the use of the name "Sargeant", would become utterly valueless. This much is plain because the plaintiff was a stranger to the people of Columbia and Richland County, whereas the defendant had been strongly entrenched and established there for many years. A re-entrance by him would almost certainly deprive the plaintiff of ·all benefit

from his contract, and the purchase money which he paid to the defendant would go for naught.

We are of the opinion that the contention of the defendant is not sound and should not be sustained. The limitation here does not go beyond what is necessary for the protection of the plaintiff in the prosecution of the business purchased by him, and is, therefore, reasonable.

The judgment of the lower Court is reversed, and the restraining order heretofore issued is reinstated.

It appears from the record that there may be other issues for determination by the Circuit Court. The case is, therefore, remanded for such further proceedings as may be proper, and which the parties may choose to initiate.

Judgment reversed.

MR. CHIEF JUSTICE BONHAM, MR. ASSOCIATE JUSTICE STUKES, and CIRCUIT JUDGES PHILIP H. STOLL and E. H. HENDERSON, ACTING ASSOCIATE JUSTICES, concur.